The fifth and final case on our call of the docket today is case number 109-886, People v. Garcia, Agenda No. 5. Counsel? Good afternoon, Mr. Chief Justice, Mr. Justices, Ms. Justices, Counsel. My name is Michelle Grimaldi-Stein. May it please the Court. I am an Assistant State's Attorney with the Cook County State's Attorney's Office. And the issue before this Court today concerns the proper construction of the extended term statute. The trial court in this case determined that even though the statute does not explicitly provide for a tolling provision for delays caused by the defendant to toll the 10-year time limit for using prior convictions as a basis for an extended term sentence, that it would toll that 10-year time limit based on the six years that the defendant was a fugitive from justice in this case after he violated the terms of his bail and fled the jurisdiction. And that the defendant, whose hideous aggravated battery warranted an extended term sentence, and who would have qualified for one based on his prior conviction had he not violated the terms of his bail and fled the jurisdiction, would not be allowed to use his bad behavior, his illegal behavior, to insulate himself from the appropriate sentence. The appellate court in this case vacated the extended term portion of the sentence, finding that because the statute did not explicitly allow for tolling, that it precluded the trial court's actions. While agreeing that tolling actually furthered the purpose of the extended term statute, the appellate court concluded that allowing for it in the absence of language in the statute itself would be tantamount to an impermissible judicial rewriting of the statute. The people submit today, Your Honors, that the appellate court's ruling is an overly strict interpretation of the statute that is not required by the language of the statute nor by any other rule of statutory construction, including the requirement that penal statutes be strictly construed. Moreover, this decision conflicts with the intent of the legislature in the enactment of the extended term provision, with well-established rules of statutory construction, and with longstanding public policy. Indeed, it conflicts with this Court's three previous decisions on the extended term statute. On these ñ in these ñ Counsel, let me ask you a question here. Based on ñ I mean, certainly your argument has some, if nothing else, equitable appeal to it, right? But you state in your brief that ñ and this is a portion of it ñ when you're discussing penal statutes being strictly construed, you say, ìNor may a court, under the guise of statutory interpretation, remedy an apparent legislative oversight by rewriting a statute in a way that is inconsistent with its clear and unambiguous language.î My question really is, how can this Court, in light of that correct proposition that was in your brief, how can this Court add additional tolling periods when the legislature has chosen to toll with a period during the time that a defendant spends in custody, right? There is that tolling provision in there. So wouldnít accepting your argument in your brief that we not rewrite the statute, doesnít that ñ wouldnít it violate those principles, and isnít this a matter where maybe the legislature should be strongly encouraged to toll also in this situation? I think the answer to that question, Your Honor, is threefold. First of all, the portion of my brief that you quoted, the end portion of that says that the statute canít be amended to be inconsistent with the legislative intent. I believe thatís what you read to me, and that adding a tolling provision here is not inconsistent with the legislative intent. Now, the rule of lenity, which is the need to strictly and narrowly construe penal statutes, is rooted in the due process clause, okay? It derives from the right a citizen has to understand that his conduct is criminal, to know what conduct is prescribed, and it requires that the statute sufficiently define the standards of illegal conduct so as to avoid arbitrary and discriminatory enforcement. Now, any citizen in Illinois has ample notice that there are legal consequences to their becoming a fugitive. The fugitive disentitlement doctrine and the longstanding public policy of not allowing a defendant to obtain any benefit or advantage from his illegal conduct have been fixtures in this Stateís jurisprudence for more than a century. So our Constitution grants a defendant, a criminal defendant, a right to a direct appeal. Now, that provision of the Constitution does not say, ìBut if you leave the jurisdiction, you will forfeit that right.î And there is no statute giving a court the power not to hear a direct appeal. Is there a rule of statutory construction, though, that would sayó I believe it was argued in a case we had earlier, in the Holmes caseó that a statute that lists certain exceptions, that the court is prohibited then from adding more exceptions? There is a rule of lawóit is a subordinate rule of lawó to the rule that this court is required to give effect to the intent of the legislature. But in People v. Lieberman, where there was a very long list of crimes which qualified for civil commitment under the Sexually Violent Persons Commitment Act, in Lieberman, this court read into that statute a crime that wasnít listed in that very long list. The people would argue that the tolling provision that exists in the statute as it was written isnít a list. Itís a modifier. Itís not a list, and it shouldnít be interpreted as an exclusive list. This court has read tolling into a statute where thereís no words for it. It did so in People v. Powell, another case under the Sexually Violent Persons Commitment Act, where the defendant was convicted on a number of sexually related crimes, and he was up for release, and the state filed a petition for civil commitment against this defendant within five days of his expected release date. And the defendant refusedóPowell refusedóto sign the document that advised him, or he was acknowledging that he understands and understood and accepted the conditions and the ramifications of mandatory supervisory release. He intentionally refused to sign that document because he didnít want to be civilly committed. And eventually he did sign it, and commitment proceedings began, and he filed a motion to dismiss because the Sexually Violent Persons Commitment Act required that petitions be filed either 90 days before the release into MSR or within 30 days after. And the defendant had stalled his entry into MSR so that the stateís petition was untimely. And the trial court refused to dismiss that petition. It would not let the defendant take advantage of his own wrongdoing, his refusal to sign that document, in order to create a way to keep himself from being civilly committed. The court said that if it ruled, even though the statute did not provide for anything but these time limits, either less than 90 days or more thanóit had to be filed less than 90 days before his release and no greater than 30 days after his entry into MSR. And the trial court said, ìI am not going to give the defendant any control over when and how the state can file a petition.î Now, the appellate court said, ìWell, sorry, the plain language of the statute has these filing limits. These limits are not directory. Theyíre mandatory. Theyíre intended to protect the defendantís, the inmateís liberty, interest, and release from prison. And we are stuck with the plain language of the statute.î This court disagreed. This court in Powell said, ìWeíre going to read that statute to allow for a timely filing within the anticipated date of release.î The words of the statute didnít say anything about that. And even though the appellate court said, ìLook, the state had another remedy. They could have refiled that petition within 30 days of the defendantís actual release.î And this court didnít care about the existence of another remedy. It said to accept the defendantís construction of the statute would be to defeat the intent of the legislature. It would be to create an unjust result. And this court wouldnít allow it. And the provision that the state, that the trial court found to exist here, this toiling provision, is no different. It is based on the same theory, that a defendant should not be able to behave in Powell. It was just badly. In this case, itís illegally. He knowingly left the jurisdiction. He had done it once before. He was gone for six years. If he had not been arrested on the bond forfeiture warrant, he would probably still be out there today because he never turned himself in. And yet weíre going to allow that illegal conduct to insulate him from a sentence that the facts of this case warranted and that he fully deserved when we have a strong public policy that is well-respected, well-known, and very entrenched in our jurisprudence, that a defendant is not going to be allowed to take advantage of his bad behavior and that there are consequences for becoming a fugitive. Justice Thomas, did I answer your question? That it is the intent of the legislature and not the explicit or literal wording of a statute, which is the appropriate guide to proper interpretation, is demonstrated by this Courtís opinion in Lieberman. Because in Lieberman, here again, was a claim under the Sexually Violent Persons Commitment Act, and the state had omitted rape as a qualifying offense. You know what, Iím sorry, did I, I seem to have, Iím hoping, am I going back to what I just argued? But what Lieberman says is that the state, the legislature didnít intend to omit rape and it was the intent that was important. It didnít look in Lieberman just to the intent of that one provision. So this Court isnít restricted in looking to this one provision. It looked to the intent of the entire Sexually Violent Persons Commitment Act. And this Court has on numerous occasions said that the intent of the extended term sentence statute is to implement the proper public policy of punishing more severely those repeat offenders whose multiple convictions demonstrate their resistance to correction. Now, the conduct that the defendant exhibited here epitomizes the type of conduct which the extended term sentence statute was intended to punish. So that to allow him to break the law and then remove himself from the ambit of the statute that is intended to punish more severely those who repeatedly break the law, not only defeats the purpose of the statute, but it leads to absurd results. It creates a great injustice and it isnít required by the language of the statute. And so for those reasons, the people respectfully request that this Court find that the appellate courtís holding was not required by the plain language of the statute because it was not in keeping with the intent of the statute. The defendant argues that there were, the state had other remedies, that they could have charged him with, or they could have tried the defendant in absentia, that they could also have prosecuted him in absentia. They could have prosecuted him for a violation of a bail bond. But this Courtís opinion in Powell makes it clear that the existence of other remedies doesnít control the issue. Because in Powell, as I noted earlier, the state had the option of refiling that petition under the Sexually Violent Persons Commitment Act within 30 days after Powellís actual release. And based on that, the appellate court said, okay, so weíre going to excuse the defendantís bad behavior because the state could have done something else. This Court, when it reversed the appellate court in Powell, did not find the existence of another remedy controlling. It refused to allow the defendantís bad behavior to bind the state to an alternative avenue of relief. And the same should apply here, because the legitimate goal of the prompt and efficient administration of justice, which is served when you impose consequences on a defendant who becomes a fugitive, and you donít allow him to take advantage of his own wrongdoing, those legitimate state interests are not furthered just because there is an alternate avenue for redress. Now, the fact that the defendant might have been able to receive a consecutive sentence for his violation of bail bond is also irrelevant to whether or not he should serve the extended term sentence for this heinous, aggravated battery that the trial court deemed appropriate. A trial court is charged with fashioning a sentence based upon a myriad of factors. And the fact that the defendant could have served an additional term based on his commission of another offense does not answer the problem of the defendant being able to use a self-occasioned delay to insulate himself from the sentence that the trial court deemed proper. Nor should he be able to force the state to incur the additional expense of another trial or the extra review that comes with an in absentia trial just to ensure that he will serve the number of years that he should have received for the original crime. I just want to make sure I hit all my points, Your Honors. If there are no other questions, because the plain language of the statute does not explicitly forbid the tolling of the 10-year term, for the delay intentionally incurred by the defendant, because precluding such a tolling produces results which defeat the legislative intent, which work a great injustice and which allows an absurd result to obtain, the people respectfully ask this court to reverse the appellate court's ruling and reinstate the defendant's extended term sentence. Thank you. Thank you, Counsel. May it please the Court, Counsel, my name is Debra Nall from the Office of the State Appellate Defender. Counselor, why don't you lift that microphone up. Oh, sorry. Is that better? Okay, sorry. I represent the appellee, Abraham Garcia. The appellate court in this case held that the plain language of the extended term sentencing statute prohibits trial courts from tolling the 10-year period for any reason except time spent in custody. The appellate court was correct. The statutory language in this case, which appears at my brief at page one, provides that a trial court may impose an extended term because, and I quote, extended term sentence, when a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction, of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody. Although the state has never quoted the statute or pointed to any specific language that this court needs to interpret, it argues that the statute is ambiguous because it does not explicitly exclude what the trial court did in this case. In other words, the state is not asking this court to interpret the statute. The state is asking this court to rewrite the statute. It does lead to a somewhat absurd result, though, doesn't it? No, Your Honor. The better a fugitive you are, the better you can control whether or not a conviction can be held against you? Your Honor, with all due respect, the state is in charge of the case, and in this case the state had options. The state could have filed a violation of bail bond. The state could have tried my client in absentia, and therefore my client would have served additional time, more likely than not. And the state chose not to avail itself of those statutorily authorized remedies. And again, respectfully, it's not the place of this court to remedy the state's change of heart. In fact, the state should be addressing its argument to the General Assembly and not this court, because acceptance of the state's argument in this case would require an unprecedented level of judicial activism by this court.  I'm sorry. Counsel discussed the rule of lenity, but this statute is different from the statutes at issue in Lieberman and Powell, because this statute is a penal statute, and also sentencing statutes are purely statutory. There's no common law of sentencing, and therefore the equitable principles, such as the forfeiture by wrongdoing doctrine, have no place in this case. And in this case, this court has already determined in People v. Robinson that the language at issue here is not ambiguous. The state did not discuss Robinson. The state spent quite a bit of time discussing Lieberman and Powell, but as I just said, the statute at issue in that case is a civil – well, actually, it's a civil proceeding, and therefore it's not a penal proceeding, and different rules apply in that case. Counsel also argued that because my client was out, he had violated his bail bond for six years, he should be punished now by rewriting the statute to overrule what the legislature has decided to do. But, in fact, my client was not convicted of any offenses. He was out, and the state, as I said, could have prosecuted him for a violation of bail bond. They could have tried him in absentia. But because they chose not to do those things, he has no conviction for 14 years, and the plain language of the statute provides that if a defendant goes more than 10 years without being previously convicted, then he's not subject to an extended term sentence for any reason except time spent in custody. And here, I'm not really sure what else to say. I mean, honestly, this case really should be across the street, as I think the state has been arguing all day about other statutes at issue. So if this court has no further questions, I will conclude by saying that the state's argument would require this court to rewrite the statute. And if any result is absurd, it would be rewriting a statute because it doesn't include something. That would mean rewriting all statutes because every statute doesn't include something. So I ask this court to affirm the appellate court and vacate as void the extended term portion of Mr. Garcia's sentence. Thank you. Thank you. Just a few brief points. First of all, I'd like to disagree quite strongly with counsel that this court decided in Robinson that every other portion of the extended term statute other than the one considered in Robinson, and that had to do with a federal conviction in a previous version, that the statute is not ambiguous as to every other aspect. That is not what Robinson held. And in point of fact, in 2000, this court had to come to another concern about the extended term statute and the meaning of the conviction and when the sentence actually occurred. That was in Lemons, so it dealt with an ambiguity there. Secondly, the fact that the plain language of the statute does not include a tolling provision does not make the language clear and unambiguous, and that is demonstrated unequivocally by this court's opinion in Hardin, another case dealing with the extended term statute. Because Hardin explicitly said where a statute neither provides for something nor excludes it, you cannot say that the clear language of the statute is unambiguous. The statute is silent on that issue, and once the statute is silent, then this court can look to other areas in order to determine what the legislative intent is, and those areas are not only the reason and necessity for the law, the evils to be remedied, the purpose to be achieved, but it's also things like public policy. In Powell, this court looked to public policy, and it also looked to how other statutes deal with similar fact situations. So Powell felt that it could draw by analogy on the speedy trial statute, which explicitly does include a tolling provision for delay occasioned by the defendant, and it applied that policy, that legislative intent, to the facts of the statute in Powell, the Sexually Violent Persons Commitment Act, even when that statute did not include any kind of tolling. So Powell and Hardin both demonstrate that this court is not bound by the language of the statute, and it is not improper judicially rewriting to interpret a statute through the lens of public policy that has been a guiding principle of this state's jurisprudence for 130 years. Also, in terms of the rule of lenity, yes, Powell and Hardin, and Lieberman dealt with the Sexually Violent Persons Commitment Act, but that statute was, the court said, might not or wasn't necessarily criminal, but it certainly was quasi-criminal, and the rule of lenity did not require, the court said, it to construe that statute so rigidly as to defeat the intent of the legislature. The people will submit that the trial court in this case correctly recognized that allowing a defendant to insulate himself from an extended term sentence that he deserved by fleeing the jurisdiction would defeat the intent of the legislature. It would be an absurd result if it was not in keeping with the public policy of this state or with the clear legislative intent as expressed in statutes like the Speedy Trial Act, and for those reasons it told the term. The people respectfully request this court to adopt that interpretation of the extended term provision and to affirm. I believe, Your Honor, that my answer to that is the fact that there are other remedies is not controlling. That's what this court said in Powell. It's not the fact that I might have been able to or we might have been able to prosecute this defendant for a violation of bail bond doesn't mean if I gave him a consecutive sentence for another crime, how does that right the wrong of him not serving the sentence that he deserved for the original crime that he was convicted? There are apples and oranges, the fact that I could have gotten the same number of years by getting a consecutive sentence. Quite frankly, he should have gotten the consecutive sentence for the violation of bail bond and the extended term. And that's what he deserved. He deserved the extended term. He disfigured this man. He disfigured this man because the man had the audacity to honk a horn because the defendant was blocking traffic. And the defendant then hunted him down and beat him with a four-foot metal pipe, broke his arm in two places, and then he took a blender pitcher and he ground it into the man's face after he broke it over his head. Those acts deserve an extended term, and he shouldn't be able to get away with it because he violated another law and fled the jurisdiction. More specifically, in following up on Justice Thomas's question, you answered with regard to the other charge that could have been brought, but the state could have tried him in absentia and gotten the extended term. Yes, Your Honor, the state could have tried him in absentia. The problem with the trial in absentia, Your Honor, is that it is a trial to which heightened scrutiny is always attached. And the avenues for appeal on that, the 115 motion to appeal that, then the direct appeal, that it forces the state to expend additional funds that it wouldn't have to. And is it a remedy? Yes, it could have been done in this case, just like the state could have filed a new petition in Powell 30 days after the defendant's entry. Should the defendant, should the tail be able to wag the dog here? Should the defendant be able to tell the state that they have to proceed this way because he was clever enough to avoid capture while the 10-year statute of limitations ran out? The state of Washington in Clark v. Washington found in a situation where impeachment, using a prior conviction for impeachment, it's very much like our rule. It has a 10-year time limit. And the state of Washington refused to allow the defendant to keep that conviction out because it was more than 10 years old because he was on the lam for eight years. And the logic in Clark v. Washington, state v. Clark, applies with equal force here. The defendant should not be able to use his bad behavior, his illegal conduct, to insulate himself from the sentence that he deserved. And this Court has the authority and the power and should find that tolling is permitted under these circumstances. There are no further questions. Thank you very much. Thank you.